Strafford,
No. 5202.

HAZEL B. BOUDREAU

*v.*

ALLIED NEW HAMPSHIRE GAS COMPANY.

Argued September 10, 1964.
Decided November 4, 1964.

*Fisher, Parsons, Moran & Temple (Mr. Robert H. Temple* orally), for the plaintiff.

*Boynton, Waldron & Dill (Mr. Richard E. Dill* orally), for the defendant.

DUNCAN, J. The plaintiff seeks to recover for disability due to the inhalation of gas fumes caused by leakage or faulty combustion, or both, from a gas stove negligently installed in her

apartment by the defendant. The defendant denied that there was any leakage which was permitted to continue for any period of time sufficient to cause the injury, and sought to establish that if the plaintiff's condition was caused by the inhalation of gases they were sewer gases present as a result of the plaintiff's own negligence.

The plaintiff, who was 47 years of age in 1958, had suffered for many years from asthma, and was also suffering from emphysema. She moved into an apartment at 8-10 Winter Street in Dover on April 1, 1958 following installation by the defendant of a gas stove in the kitchen. The building was jointly owned by the plaintiff and her sisters. The gas furnished by the defendant was natural gas containing an additive of mercaptans, the odor of which is intended to permit detection of the presence of the gas. The plaintiff complained of the smell of gas at various times in April, May, and June, and as late as September in 1958, and employees of the defendant and of the fire department sought to discover any leaks and to remedy them.

The plaintiff first commenced to feel ill shortly after she moved into the apartment. She consulted her family physician as early as April 7, 1958. Thereafter she was confined to the hospital from May 29 to June 7 with a condition which her physician diagnosed as pneumonia and carbon monoxide poisoning which he assumed resulted from the inhalation of "illuminating gas." On June 21, 1958, the plaintiff was readmitted to the hospital and on July 12, 1958 was transferred to the Massachusetts General Hospital in Boston. On July 31, 1958 she was there operated upon, and the upper lobe of her right lung was removed. This was found to contain a non-malignant fatty deposit of cholesterol. She was discharged from the hospital on August 13, 1958 with a diagnosis of "cholesterol pneumonitis."

From November 1 to November 9, 1958 the plaintiff was hospitalized in Dover for acute bronchitis, and again in October 1960 for the same complaint. In June 1962 she was confined to the same hospital for eleven days with lobar pneumonia. Although these three periods of hospitalization were not claimed to have been precipitated by gas inhalation, it was the plaintiff's contention that they arose from the physical deterioration caused by the earlier illness which culminated in the lung surgery.

The plaintiff attacks the general verdict for the defendant upon the ground that it may have resulted from the defense that sewer

gas caused or contributed to cause her injury and that this defense was based upon competent evidence; that there was no evidence that such gas was present in her apartment; and that there was no evidence that if it was, it was causal of her injury. The propriety of the verdict is not questioned if based upon a finding either that the defendant was not negligent or that its negligence did not cause or contribute to cause the injury. The plaintiff's argument is directed solely to the proposition that, under instructions erroneously given, the jury could have found that the injury resulted in whole or in part from her own failure to exercise care to prevent the leakage of sewer gas into her apartment, and that the evidence was insufficient to warrant such a finding.

In the course of inspecting the premises for gas leakage, the defendant undertook to improve combustion in a water heater in the basement by installing a chimney vent on May 28, 1958. On further investigation, on June 18, 1958, an employee of the defendant, who was a cousin of the plaintiff, discovered leakage of sewer gas into the basement from a sewer pipe located just below the floor of the plaintiff's apartment. The defendant's contention that the plaintiff was negligent in failing to prevent the escape of sewer gas was based in part upon the testimony of this witness that he thereupon advised the plaintiff to have the discovered leakage corrected. It was in fact corrected in January of 1959. The sewer system in the basement, which served two other apartments besides the plaintiff's, in addition to being vented by stack at the rear of the building was also vented in the basement into the same chimney into which the plaintiff's kitchen stove was vented. There was evidence that this venting of the sewer into the chimney would allow sewer gas to enter the apartment through the flue of the kitchen stove, and that back drafts were aggravated by the existence of two sewer vents.

To establish that sewer gas would enter the building from the sewer main outside, the defendant in March 1963 caused the unexposed sewer within the building to be excavated in order to ascertain that there were no traps within the building which would operate to prevent a flow of gases into the pipes inside the building from the sewer main outside. During a period from October 1962 to March 30, 1963, the defendant caused experiments to be made from the main outside the building, and evidence of these experiments was received over the plaintiff's

exceptions. This evidence tended to show that a colored vapor inserted in the sewer main at a point some fifty feet from the building was seen to emerge from the top of the plaintiff's chimney within forty-five seconds after its release into the main. There was also evidence that this chimney was the high point of the area sewer system, so that under certain atmospheric and weather conditions gases from the main sewer system would be drawn to discharge through the chimney. The expert called by the defendant who had made a study of the sewer conditions and atmospheric conditions as they existed in 1958 testified that in his opinion sewer gases were leaking into the house in 1958.

The plaintiff excepted to denial of her motion to strike the testimony of the expert and contends that the evidence was incompetent because based upon observations and tests made four or five years after the complaints of gas leakage were made, and because conditions were not shown to have been the same at that time as when the complaints were made. *Mason* v. *Railway*, 79 N. H. 300.

Any changes which occurred in the sewer system between April 1, 1958 and the time the tests were made were not such as to affect the accuracy of the observations. The repairs made to the sewer pipes in the basement in 1959 served only to prevent escape of gas into the basement. There was no evidence that any changes were made in the system in the basement when it was examined in March 1963. Since it could fairly be determined from the evidence that the conditions which existed when the observations were made did not vary materially from those existing when the complaints arose, or in such a way as to affect the validity of the tests, the evidence was properly received. *Chatman* v. *Railroad*, 86 N. H. 317, 318. See *Palmer* v. *Edgerly*, 87 N. H. 391, 395; *Paisner* v. *Renaud*, 102 N. H. 27, 31.

The plaintiff's further argument that the evidence tended merely to establish the presence of gas in the chimney and that therefore certain expert testimony should have been stricken, is not supported by the record. A witness called by the plaintiff testified that in 1958 he found sewer gas leaking into the basement just beneath the plaintiff's apartment floor. The plaintiff and other witnesses testified to smelling a "rotten egg" smell in the apartment, and this was shown to be the characteristic odor of hydrogen sulphide found in sewer gas. One of the defendant's expert witnesses testified that it was his opinion that sewer gas was

"passing into the atmosphere of the building" in 1958, and that sewer gas would have gained admission to the plaintiff's apartment through the flue of the stove, as the result of back drafts.

The argument that the defendant produced no evidence that inhalation of sewer gas could have caused the plaintiff's disability (see *Nelson* v. *Northumberland,* 90 N. H. 141), is likewise answered by the record. It is true that none of defendant's medical experts so testified. The thrust of the defendant's evidence was that the plaintiff's lung condition was "the end result of a slowly resolving bacterial pneumonia" due to infection and not to inhalation of gas or "gas poisoning"; and that, in any event, no gases which could come from combustion or from natural gas were present in sufficient quantity to cause such a disability. The defendant's evidence further tended to show that the only gas present in the apartment which could be classified as an "irritant" was the hydrogen sulphide component of sewer gas; and that the components of natural gas and its additive mercaptans, and the product of faulty combustion (carbon monoxide) were not "irritants" and would not produce the injury complained of.

This evidence, in conjunction with the testimony of the plaintiff's attending physician that her disability was caused by irritation of her lungs from the inhalation of "irritant" gases warranted submission to the jury of the issue of whether the plaintiff's injury was caused by sewer gas.

The plaintiff's further contention that sewer gas was not shown to have been present in dangerous quantity, and that therefore the instructions given erroneously permitted a verdict based upon surmise and conjecture (*Russell* v. *Railroad,* 83 N. H. 246; *Nadeau* v. *Stevens,* 79 N. H. 502), applies with equal force to her own proof of the presence of other gases. A finding that any gas was present in sufficient quantity to cause injury rested only upon the circumstantial evidence of the fact of injury, relied upon by the plaintiff's physicians as a basis for their opinions. If their testimony was sufficient to permit a finding that the plaintiff's condition was due to inhalation of irritant gases, the jury could find that such gases had been present in sufficient quantity. If the jury could not properly accept this testimony so that sewer gas could not be found causal, then the plaintiff's case in chief likewise was lacking in evidence of the presence of any other gas in quantity sufficient to cause injury. We find no error in the manner in which the issue was submitted to the jury.

Other exceptions preserved by the plaintiff are considered to be without merit. The order is

*Judgment on the verdict.*

All concurred.